UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

DAVID DUTT,

                Petitioner,

     v.

TIMOTHY WENGLER and JOHANNA SMITH,[1]

                Respondents.

Case No. 1:10-cv-00589-CWD

**MEMORANDUM DECISION AND ORDER**

In his federal Habeas Corpus Petition, filed on November 29, 2010, Petitioner asserts that his trial counsel, Dennis Weigt, performed ineffectively when he failed to call witness "Bob" Canada to testify for the defense at trial. (Dkt. 1.) Pending before the Court are the parties' cross-motions for summary judgment. (Dkt. 11, 13.) The motions are now fully briefed and ripe for adjudication. Both parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. (Dkt. 5, 6.) *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

---

[1] Petitioner indicated that he had been transferred and would file a motion to substitute respondent. (Dkt. 11.) The IDOC website shows he is currently incarcerated at ISCI under the custody of Warden Johanna Smith. The Court, therefore, adds, for the purpose of substitution of respondent, Warden Smith as a respondent in this case for jurisdictional purposes. See Fed. R. Civ. P. 25(d).

**MEMORANDUM DECISION AND ORDER - 1**

Having fully reviewed the record, including the state court record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that the decisional process would not be significantly aided by oral argument. Therefore, in the interest of avoiding further delay, the Court shall decide this matter on the written motions, briefs, and record without oral argument. D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order.

## BACKGROUND

On January 30, 2001, Petitioner David Dutt, then twenty-seven years old, was charged by indictment with three counts of lewd conduct with a minor under sixteen, in violation of Idaho Code § 19-1508, for incidents of manual/genital contact, oral/genital contact, and genital/genital contact with his twelve-year-old stepdaughter, S.T., all occurring in 1999. S.T.'s mother, Terry Dutt, who was nine years older than Petitioner (her husband), was charged with one count of sexual abuse of a child under sixteen in violation of I.C. § 19-1506 and one count of failing to report child abuse in violation of I.C. § 16-1619. (State's Lodging A-1, pp.7-10; A-2, p. 607.)

Petitioner was represented by Attorney Dennis Weigt at trial, and Terry Dutt was represented by Attorney Kerri Cobb-Hamilton. The Dutts were tried together in the Fourth Judicial District Court in Boise, Idaho, before the Honorable Thomas F. Neville.

S.T., fifteen years old and in the tenth grade in high school at the time of the trial, testified in great detail about the sexual contact she had with Petitioner. (State's Lodging A-2, pp. 531-692.) Respondent has outlined the details of S.T.'s testimony accurately in

**MEMORANDUM DECISION AND ORDER - 2**

the Statement of Material Facts, and the Court will not repeat the details here, except regarding the "Kuna Caves" incident which is the subject of Petitioner's claims. (Dkt. 13-1.)

S.T. testified that, in the summer of 1999, she and Petitioner went to Meridian to get a man named Bob and his son to travel to the Kuna Caves with them. (State's Lodging A-2, pp. 563-66.) S.T. and Petitioner rode together, while Bob and his son followed behind them in a separate vehicle. (*Id.*) They never found the Kuna Caves, but instead stopped at a lake or river. (*Id.*, p. 567.) On the drive home, Bob and his son again followed S.T. and Petitioner in a separate car. (*Id.*)

At trial, S.T. testified that, during the return trip from the Kuna Caves, Petitioner said that he wanted her to "give him head," and he "put his hands down [her] pants and [she] put [her] mouth on his penis." (*Id.*, p. 568.) She testified that, prior to this incident, Petitioner had ejaculated in her mouth in the bathroom of their home. (*Id.*) S.T. testified that, during the Kuna Caves trip, she "gagged" because "it went down too far," and she "threw up," with most of the vomit going outside the car, which she later cleaned, telling her mom she had been carsick. (*Id.*, p. 569.) Petitioner testified at trial that he and S.T. had taken a trip searching for the Kuna Caves with Bob and his son, but Petitioner denied the sexual allegations and the vomiting. (*Id.*, pp. 929-34.)

After a jury trial lasting from November 6, 2001, to November 9, 2001, Petitioner was found guilty of the three counts of lewd conduct, and Terry Dutt was found guilty of failing to report child abuse. Petitioner's judgment of conviction was entered on

**MEMORANDUM DECISION AND ORDER - 3**

December 24, 2001. (State's Lodging A-1, pp. 81-84.) Petitioner completed a direct appeal, with the Idaho Court of Appeals affirming the convictions and sentences, and the Idaho Supreme Court denying the petition for review. (State's Lodgings B-1 to B-8.)

On December 8, 2003, Petitioner filed a pro se post-conviction relief application that included a claim of ineffective assistance of counsel, based on his allegation that his trial counsel failed to "bring germane witnesses." (State's Lodging, C-1, pp. 4-9.) Judge Neville also presided over the post-conviction matter. In that action, Petitioner offered two slightly different affidavits from John R. "Bob" Canada, a lay witness who had not been called at trial. In the First Affidavit, Canada stated, in pertinent part:

> On or about the 7th of November 2001[,] the Ada County Prosecuting Attorney's investigator telephoned me and questioned me about David Dutt. *He asked me several personal questions about David's character and what type of person I thought he was.*

(State's Lodging C-1, pp. 14-15, emphasis added.)

Petitioner later submitted the Second Affidavit, wherein Canada stated:

> On or about the 7th of November 2001[,] the Ada County Prosecuting Attorney's Investigator telephoned me and questioned me about David Dutt.

> On or about November 8, 2001[,] the Prosecutor's investigator showed up at my house with a subpoena to appear in court the next day; he told me that he wanted me to testify. I complained to the man that I would have to miss work and who was going to pay me for the time off.

> I was contacted later that same evening by David Dutt's attorney, who asked me what questions the prosecutor's investigator asked me, thanked me for my time and ended the call.

**MEMORANDUM DECISION AND ORDER - 4**

I reported to the court house the next morning[.] [T]he Prosecutor's investigator who served me the original papers was waiting for me at the entrance of the Courthouse and then escorted me to a room and asked me to collaborate [sic] the Victim's testimony about a trip to Kuna that I took with (my step son) along with David Dutt and his stepdaughter, [S.T.]. I told him that nothing out of the ordinary happened during that day. This disputed the Victim's testimony[.] He left the room, stating he would be back shortly. He came back with Jean Fisher, the Prosecuting Attorney, who asked me what I knew about the trial, I told her I didn't have any information about the trail [sic], I worked and didn't attend. She then began to question me about the Kuna trip, I told her that nothing happened; she asked if I have seen [S.T.] vomit or was aware of oral sex being performed in the car. I told her again that nothing like that happened. I know this because my son who was 15 and myself was [sic] following the car David and [S.T.] were riding in with my 4x4 Blazer, we had a totally clear view into the vehicle and they were not out of our sight for any length of time. Ms. Fisher seemed irritated and started asking me the same questions in different ways, and I continued to tell her that nothing that she was talking about was ever seen by my son and me. Ms. Fisher stopped abruptly, and then stated that she didn't need my testimony, and that I would be sent a check for $7.00 for my time, which I have never received. I was then escorted to my car by two Prosecutor's people, whom were told by Ms. Fisher not to let me talk with anyone, and to make sure I left the premises immediately. As I was being escorted to my car, I ran into Dale Dutt father of David Dutt, I was immediately pushed through the door and was not allowed to converse with Dale Dutt. When I came to the car these escorts demanded my copies of the subpoena paperwork back, which I thought was strange.

(State's Lodging C-1, pp.91-92.)

Initially, the state district court denied Petitioner's request for appointment of counsel and dismissed Petitioner's post-conviction application after the State's answer, without an evidentiary hearing. (State's Lodging C-1, pp. 107-09.) On appeal, the Idaho Court of Appeals reversed and remanded the case for appointment of counsel and further proceedings because "Dutt has at least raised the possibility of a valid post-conviction

claim, and thus should have been appointed an attorney to assist him." (State's Lodging D-11, p.6.)

After remand, the Ada County Public Defender was appointed counsel for Petitioner. (State's Lodging E-1, pp. 24-27.) Petitioner's counsel filed an amended post-conviction relief application, containing, among other claims, an ineffective assistance of counsel claim arising from trial counsel's failure to present the exculpatory testimony of witness John R. "Bob" Canada. (*Id.*, pp. 37-42.)

The State filed an answer and a motion for partial summary dismissal. (*Id.*, pp. 340-48.) The state district court denied the motion for partial summary dismissal, finding all of the new claims in the amended application properly related back to the original application, but the court issued a notice of intent to dismiss on the merits. (*Id.*, pp. 349-60.) The state district court specifically provided the following notice to Petitioner:

> Several of Petitioner's claims of ineffective assistance of counsel fall into the category of trial strategy. The fact that defense counsel did not call John R. Canada to the witness stand falls within the category of trial strategy. The decision to call or not call witnesses is within the purview of counsel as a strategic decision.

(*Id.*, pp. 353-54.)

Petitioner did not file a response to the notice of intent to dismiss. Thereafter, the state district court dismissed the post-conviction action without an evidentiary hearing. (*Id.*, pp. 361-63.) Petitioner filed a notice of appeal. The case was assigned to the Idaho Court of Appeals. (State's Lodging F-4.)

**MEMORANDUM DECISION AND ORDER - 6**

On appeal, Dutt argued that his post-conviction case should not have been summarily dismissed because "there is a factual issue as to whether counsel's failure to present Canada's testimony was a tactical decision or instead is attributable to inadequate investigation or other deficiency on the part of counsel." (State's lodging F-4, p. 6.) The Idaho Court of Appeals agreed with the district court, citing Petitioner's failure to meet his burden to show the decision about "Bob" Canada was not tactical:

> In order to avoid summary dismissal it was Dutt's burden to affirmatively put in evidence that his attorney's decision not to call Canada as a witness was not a legitimate strategy. It is insufficient for Dutt to merely show that his counsel failed to use material impeachment evidence that was readily available. Only Dutt's counsel knows the reason for not using Canada as a defense witness. In circumstances such as this, an affidavit is necessary in order to determine exactly what counsel was thinking when certain decisions were made. Bringing forth an affidavit from Dutt's counsel or some other form of evidence to prove that the decision was not strategic was a responsibility that belonged to Dutt.
>
> Canada's affidavit does not establish that Dutt's trial counsel had inadequate knowledge to make a strategic choice about whether or not to call Canada as a witness. Therefore, the district court did not err when it determined that it was a tactical decision as to whether or not to call Canada as a witness. Dutt has failed to show that there was a genuine issue of material fact as to deficient performance by his trial counsel. Accordingly the district court did not err when it summarily dismissed Dutt's claim of ineffective assistance of counsel.

(State's Lodging F-4, pp.6-7) (internal citation omitted).

Petitioner filed a petition for review with the Idaho Supreme Court. That petition was denied, and the remittitur issued on August 17, 2010. (State's Lodging F-8.) Petitioner next filed the Writ of Habeas Corpus in this federal action. There are no disputed material facts, and both parties assert entitlement to summary judgment.

**MEMORANDUM DECISION AND ORDER - 7**

**MOTIONS FOR SUMMARY JUDGMENT** (Dkt. 11, 13)

1.      **Standard of Law**

Summary judgment is appropriately granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Federal Rules of Civil Procedure apply to habeas corpus actions except where application of the rules would be inconsistent with established habeas practice and procedure. Rule 11, Rules Governing Section 2254 Cases. Accordingly, summary judgment motions are appropriate in habeas corpus proceedings where there are no genuine disputes as to any material facts and the moving party is entitled to judgment as a matter of law. *Blackledge v. Allison*, 431 U.S. 63, 80-81 (1977). Judicial notice will be taken of the court docket in the underlying state court proceedings. Fed. R. Evid. 201(b); *Dawson v Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

Federal habeas corpus relief may be granted on claims adjudicated on the merits in a state court judgment only when the federal court determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act (AEDPA), federal habeas corpus relief is further limited to instances where the state-courts adjudication of the merits:[2]

_____

[2]A state court need not "give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011).

**MEMORANDUM DECISION AND ORDER - 8**

1.     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

When a party contests the state court's legal conclusions, including application of the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests: the "contrary to" test and the "unreasonable application" test. Under the first test, for a decision to be "contrary to" clearly established federal law, the petitioner must show that the state court applied "a rule of law different from the governing law set forth in United States Supreme Court precedent, or that the state court confronted a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrived at a result different from the Court's precedent." *Williams v. Taylor*, 529 U.S. 362, 404-06 (2000).

Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1), the petitioner must show that the state court was "unreasonable in applying the governing legal principle to the facts of the case." *Williams*, 529 U.S. at 413. A federal court cannot grant relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell v. Cone*, 535 U.S. 685, 694 (2002).

**MEMORANDUM DECISION AND ORDER - 9**

In *Harrington v. Richter*, 131 S.Ct. 770 (2011), the United States Supreme Court reiterated that a federal court may not simply re-determine a claim on its merits after the highest state court has done so, just because the federal court would have made a different decision. Rather, the review is necessarily deferential. The Supreme Court explained that under § 2254(d), a habeas court (1) "must determine what arguments or theories supported or . . . could have supported, the state court's decision;" and (2) "then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id*. at 786. If fairminded jurists could disagree on the correctness of the state court's decision, then a federal court cannot grant relief under § 2254(d)(1). *Id*. The Supreme Court emphasized: "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (internal citation omitted).[3]

When a party contests the state court's factual determinations, the court must undertake a § 2254(d)(2) analysis. To be eligible for relief under § 2254(d)(2), the petitioner must show that the state court decision was based upon factual determinations that were "unreasonable in light of the evidence presented

---

[3] A federal habeas court can look only to the record before the state court in reviewing a state court decision under section 2254(d)(1). *Cullen v. Pinholster*, 131 S.Ct. 1388, 1400 (2011) ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court.") (footnote omitted); *Holland v. Jackson*, 542 U.S. 649, 652 (2004) ("[W]e have made clear that whether a state courts decision was unreasonable must be assessed in light of the record the court had before it.") (citations omitted).

**MEMORANDUM DECISION AND ORDER - 10**

in the State court proceeding." *Id*. The United States Supreme Court has admonished that a "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010) (citations omitted).

The United States Supreme Court has yet to decide "whether, in order to satisfy § 2254(d)(2), a petitioner must establish only that the state-court factual determination on which the decision was based was 'unreasonable,' or whether § 2254(e)(1) additionally requires a petitioner to rebut a presumption that the determination was correct with clear and convincing evidence." *Wood v. Allen*, 130 S.Ct. 841, 848 (2010). Rather, that Court first applies the "unreasonable" test of § 2254(d)(2), and, if it does not conclude that the state court decision is an unreasonable determination of the facts based on the state court record, it does not reach the question of whether the higher standard of § 22254(e)(1) applies. *See Wood*, 1130 S.Ct. at 849. The United States Court of Appeals for the Ninth Circuit, on the other hand, has resolved the conflict presented by these two sections–it applies only § 2254(d)(2) if the review is based upon the same factual record that was before the state court ("intrinsic review"), while it applies § 2254(e)(1) to factual challenges that involve evidence presented for the first time in federal court ("extrinsic evidence"). Here, the parties do not seek to introduce new evidence in federal court, but are relying on the state court record.

**MEMORANDUM DECISION AND ORDER - 11**

If the federal court concludes that a state court adjudication was based on an unreasonable determination of fact, then the federal court must "consider the petitioner's related claim de novo" to determine whether the petitioner has shown that relief under § 2254(a) is warranted. *Maxwell v. Roe*, 628 F.3d 486, 494-95 (9th Cir. 2010). *See also Jones v. Walker*, 540 F.3d 1277 (11th Cir. 2008) (*en banc*).[4]

The clearly-established law governing a claim of ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984). There, the United States Supreme Court determined that, to succeed on an ineffective assistance claim, a petitioner must show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness, and (2) the petitioner was prejudiced by the deficient performance. *Id*. at 684.

In assessing whether trial counsel's representation fell below an objective standard of competence under *Strickland*'s first prong, a reviewing court must

---

[4] The *Jones* Court reasoned:

[W]hen a state court's adjudication of a habeas claim results in a decision that is based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, this Court is not bound to defer to unreasonably-found facts or to the legal conclusions that flow from them.... Because the Georgia Supreme Court unreasonably determined the facts relevant to Jones' Sixth Amendment claim, we do not owe the state court's findings deference under AEDPA. We therefore apply the pre-AEDPA de novo standard of review to Jones' habeas claims. "

540 F.3d at 1288 n.5 (quotations, citations, and alterations omitted).

**MEMORANDUM DECISION AND ORDER - 12**

view counsel's conduct at the time that the challenged act or omission occurred, making an effort to eliminate the distorting lens of hindsight. *Id*. at 689. The court must indulge in the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id*.

The *Strickland* Court outlined how to use the factors of deficient performance and prejudice to assess a claim that counsel failed to investigate a defendant's case:

> These standards require no special amplification in order to define counsel's duty to investigate, the duty at issue in this case. As the Court of Appeals concluded, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

466 U.S. at 690-91.

Prejudice under these circumstances means that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 684, 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id*. at 694.

A petitioner must establish both incompetence and prejudice to prove an ineffective assistance of counsel case. 466 U.S. at 697. On habeas review, the court

**MEMORANDUM DECISION AND ORDER - 13**

may consider either prong of the *Strickland* test first, or it may address both

prongs, even if one is deficient and will compel denial. *Id.*

The foregoing standard, giving deference to counsel's decisionmaking, is

the de novo standard of review. Another layer of deference–to the state court

decision–is afforded on federal habeas corpus review. In giving guidance to district

courts reviewing *Strickland* claims on habeas corpus review, the United States

Supreme Court explained:

> The pivotal question is whether the state court's application of
> the *Strickland* standard was unreasonable. This is different from
> asking whether defense counsel's performance fell below
> *Strickland*'s standard. Were that the inquiry, the analysis would be
> no different than if, for example, this Court were adjudicating a
> *Strickland* claim on direct review of a criminal conviction in a
> United States district court. Under AEDPA, though, it is a necessary
> premise that the two questions are different. For purposes of §
> 2254(d)(1), "an unreasonable application of federal law is different
> from an incorrect application of federal law." *Williams*, *supra*, at
> 410, 120 S.Ct. 1495. A state court must be granted a deference and
> latitude that are not in operation when the case involves review
> under the *Strickland* standard itself.

*Richter*, 131 S.Ct. at 785.

The United States Supreme Court recently has determined several claims

asserting ineffective assistance of counsel based on a failure-to-investigate theory,

including *Wood v. Allen* and *Harrington v. Richter*. In *Wood*, the Supreme Court

analyzed whether "counsel's failure to pursue or present evidence of [the

petitioner's] mental deficiencies was not mere oversight or neglect but was instead

the result of a deliberate [strategic] decision." 130 S.Ct. at 850. In *Wood*, the

**MEMORANDUM DECISION AND ORDER - 14**

petitioner had three counsel working on his case, and the state court record contained testimony of each counsel, which aided the Court in determining whether the decision not to present or further investigate an expert report on petitioner's mental deficiencies was, indeed, "strategy," rather than mere oversight or neglect.

The *Wood* Court noted that the inquiry of whether a decision was *strategic* was an analysis of the factual determinations of the state court, falling under § 2254(d)(2), while whether the strategic decision was *reasonable*, was an analysis of the application of the law to the facts, falling under § 2254(d)(1). *Id*. The *Wood* Court particularly rejected reasoning that "counsel could not have made a strategic decision not to pursue evidence of Wood's mental deficiencies because there could be no reasonable justification for doing so," because such reasoning conflates the question of whether the decision was strategic with whether the strategic decision was reasonable. *Id*. at 850 n.3.

Rather, the *Wood* Court turned to the state court record and reviewed the evidence that supported the finding that the decision was the result of strategy: testimony of counsel that nothing in the report merited further investigation, a contemporaneous letter between co-counsel noting that no independent psychological tests had been done because one counsel thought they were not

**MEMORANDUM DECISION AND ORDER - 15**

needed, and counsel's statement to the judge that counsel did not intend to introduce the report into evidence. 130 S.Ct. at 849-50.

The *Wood* Court also reviewed the evidence that did not support the finding: testimony of counsel that he would have presented mental health evidence if he had been aware of it, testimony of counsel that he did not recall whether he had decided not to present evidence based on the report, evidence that the least-experienced counsel was handling the sentencing phase of the trial, testimony of a second counsel who reported that he did not recall considering the petitioner's mental deficiencies, evidence that the report had been prepared for the guilt phase rather than the penalty phase of trial, testimony that counsel wanted to pursue additional mental health evidence for sentencing but did not because they believed the sentencing judge would not grant them a continuance to investigate, and testimony that counsel must have thought evidence of the petitioner's mental deficiencies was important because such evidence was presented at the final sentencing hearing. *Id*. at 850. The *Wood* Court particularly noted that most of this evidence "speaks not to whether counsel made a strategic decision, but rather to whether counsel's judgment was reasonable–a question we do not reach." *Id*.

The *Wood* Court concluded: "Reviewing all of the evidence, we agree with the State that *even if it is debatable*, it is not unreasonable to conclude that, after reviewing the [expert] report, counsel made a strategic decision not to inquire

**MEMORANDUM DECISION AND ORDER - 16**

further into the information contained in the report about Wood's mental deficiencies and not to present to the jury such information as counsel already possessed about these deficiencies." 130 S.Ct. at 850-51 (emphasis added). The *Wood* Court reiterated that "even if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's ... determination.'" 130 S.Ct. at 849 (quoting *Rice v. Collins*, 546 U.S. 333, 341-42 (2006)).

While *Wood v. Allen* was a § 2254(d)(2) case reviewing the state court's factual determination of attorney "strategy," *Harrington v. Richter* was a § 2254(d)(1) case reviewing the state court's legal determination of whether attorney strategy was "reasonable." 131 S.Ct. at 786. In *Richter*, the petitioner presented affidavits of three forensic expert witnesses to challenge whether the petitioner's counsel's defense decision not to use expert witnesses was unreasonable. It does not appear that the petitioner presented evidence from the trial counsel himself as to why he made the decision not to investigate the origin of a pool of blood found on the floor of the crime scene.

On the record before it, the United States Supreme Court noted that the Eleventh Circuit should have "'reconstruct[ed] the circumstances of counsel's challenged conduct' and 'evaluate[d] the conduct from counsel's perspective at the time,'" rather than review the record from hindsight. 131 S.Ct. at 789 (quoting

**MEMORANDUM DECISION AND ORDER - 17**

*Strickland*, 466 U.S. at 680.) The United States Supreme Court then reviewed the record. After discussing several potential strategy reasons upon which counsel could have made his decision, the Supreme Court determined that the state court decision was not unreasonable and habeas corpus relief was not warranted:

> The [Eleventh Circuit] Court of Appeals erred in dismissing strategic considerations like these as an inaccurate account of counsel's actual thinking. Although courts may not indulge "post hoc rationalization" for counsel's decisionmaking that contradicts the available evidence of counsel's actions, *Wiggins*, 539 U.S., at 526–527, 123 S.Ct. 2527, neither may they insist counsel confirm every aspect of the strategic basis for his or her actions. There is a "strong presumption" that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than "sheer neglect." *Yarborough v. Gentry*, 540 U.S. 1, 8, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam).

131 S.Ct. at 790.

With these standards of law and case examples in mind, the Court now analyzes the state court record in Petitioner's case.

## 2.     Discussion

### A.     *Factual Determination*

Here, Petitioner challenges the state court decision on both factual (§ 2254(d)(2)) and legal grounds (§ 2254(d)(1)). As noted above, the *Wood* Court treated the question of whether counsel's decision was strategic as a factual inquiry under § 2254(d)(2). *See Wood*, 130 S.Ct. at 850. In general, "strategic" decisions include "what evidence should be introduced, what stipulations should be made,

**MEMORANDUM DECISION AND ORDER - 18**

what objections should be raised, and what pre-trial motions should be filed." *U.S. v. Teague*, 953 F.2d 1525, 1531 (11th Cir. 1992). The first question at hand, then, is whether the evidentiary record placed before the Idaho Court of Appeals shows that Mr. Weigt's decision not to further investigate or call Mr. Canada to testify at trial was the result of "inattention" or "reasoned strategic judgment." *Wiggins v. Smith*, 539 U.S. 510, 526 (2003).

One of the charged incidents was the "Kuna Caves" incident: S.T. alleged that Petitioner molested her in the car on the drive home from the Kuna Caves. At least by the time of trial, Petitioner's counsel knew that "Bob" Canada has followed Petitioner and S.T. to and from the Kuna Caves. According to Mr. Canada's Affidavits, he had potentially exculpatory evidence about the lewd conduct charge centering on the Kuna Caves incident.

The Court agrees with Petitioner that the amount of information in the record about why Mr. Weigt chose not to further investigate "Bob" Canada is sparse. Petitioner attempts to spin this dearth of facts in his own favor, asking this Court to infer that counsel's decision was *not* strategic, because the record contains little evidence that it was. However, Petitioner bore the burden of proof in the post-conviction matter, and Petitioner bears the burden of proof in this action. Petitioner elected not to include in the state court record any evidence explaining why Mr. Weigt decided not to call Mr. Canada as a defense witness after his interview, and Petitioner is laden with that decision in this action.

**MEMORANDUM DECISION AND ORDER - 19**

Petitioner also makes much ado about the statement made by the Idaho Court of Appeals that "an affidavit is necessary" for Petitioner to have prevailed in the post-conviction action. However, it is the *lack* of evidence upon which the Idaho Court of Appeals focused; the statement is not to be understood as declaring that an affidavit was the *only* way to present the evidence, as Petitioner argues. It was but one way available for Petitioner to meet his burden. (State's Lodging F-4, p.7) ("Bringing forth an affidavit from Dutt's counsel *or some other form of evidence* to prove that the decision was not strategic was a responsibility that belonged to Dutt.") (emphasis added).

Petitioner could have obtained an affidavit from Weigt, or, if Weigt refused to cooperate, Petitioner could have informed the state district court and requested that Weigt be required to appear to testify before the court and bring his file by issuing a subpoena duces tecum. Another avenue to attempt to obtain cooperation from Mr. Weigt would have been to contact the Idaho State Bar Association for help, via telephone call, letter, or bar complaint.

There is nothing in the record suggesting whether Mr. Weigt was uncooperative; rather, it appears that, for reasons of inattention or strategy, Petitioner and his post-conviction counsel simply did not ask Mr. Weigt for his cooperation. In fact, Petitioner did not even respond to the state court's notice of intent to dismiss that specifically identified the problem with the claim: "[t]he

**MEMORANDUM DECISION AND ORDER - 20**

decision to call or not call witnesses is within the purview of counsel as a strategic decision." (State's Lodging E-2, pp. 353-54.)

The record that was before the state court and that is before this Court reflects that (1) Mr. Weigt's strategy was to show that Petitioner was telling the truth, and S.T. was lying because S.T. was jealous of her mother's relationship with Petitioner and wanted to move out of their household because of tough discipline and chores; (2) Mr. Weigt knew Mr. Canada accompanied Petitioner and S.T. to and from the Kuna Caves: (3) Mr. Weigt knew Mr. Canada had been subpoenaed to testify in favor of the prosecution at trial; (4) Mr. Weigt took the time to do a brief interview of Mr. Canada; (5) Mr. Weigt found out that the subject matter of the prosecutorial investigator's interview with Mr. Canada was personal questions about Petitioner's character and what type of person Mr. Canada thought Petitioner was; and (6) Mr. Weigt decided not to further investigate or call this witness who had been subpoenaed by the prosecution.

This Court concludes that, based on the foregoing, it was not an unreasonable determination of the facts for the Idaho Court of Appeals to determine that Mr. Weigt made a strategy decision about Mr. Canada's value (or lack of value) as a witness after he interviewed him, and that Mr Weigt's decision was not the product of mere inattention. As the *Rice* and *Wood* opinions instruct, "even if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial

**MEMORANDUM DECISION AND ORDER - 21**

court's ... determination." 130 S.Ct. at 859 (quoting *Rice v. Collins*, 546 U.S. at 341-42).

Petitioner's argument focuses not on what Mr. Weight *did* find out, but on what Mr. Weigt failed to find out during the interview with Mr. Canada. Petitioner argues that Mr. Weigt could have found out more and different information from Mr. Canada, particularly that Mr. Canada did not see any sexual activity or vomiting in the car in front of him during the Kuna Caves trip. However, this argument does not nullify the underlying facts or the conclusion set forth above, because it conflates the question of "strategy" with the question of "reasonableness," which the *Wood* Court found improper.

## B.   *Legal Determination*

### (1) *Strickland* Deficient Performance Prong

The Court now turns to Petitioner's argument that the Idaho Court of Appeals's legal determination is contrary to, or an unreasonable application of, governing law under § 2254(d)(1). As the *Richter* Court explained, a reviewing court should reconstruct the circumstances of trial counsel's challenged conduct and evaluate the conduct from trial counsel's perspective at the time of investigation and trial. The circumstances of trial counsel's conduct have been reconstructed above.

An evaluation of the conduct properly includes potential reasons why Mr. Weigt did not do more to investigate Mr. Canada and/or call him as a defense

**MEMORANDUM DECISION AND ORDER - 22**

witness at trial, so long as those reasons are based on evidence presented to the state courts, rather than speculation. It is also important to remember that counsel does not need to think of every possible tactic or overturn every stone in preparing a defense. "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Richter*, 131 S.Ct. at 791.

To obtain habeas corpus relief, Petitioner must show that "it was indisputable that *Strickland* required his attorney to act upon [the] knowledge," *Richter*, 131 S.Ct. at 791, here, to investigate Mr. Canada further because Mr. Weigt knew that Mr. Canada had followed Petitioner and S.T. to and from the Kuna Caves. This, Petitioner has not shown. The import of Mr. Canada's testimony to the defense is based on hindsight and an untested affidavit. At the time of the Kuna Caves trip, Mr. Canada did not know that S.T. was alleging that Petitioner had been molesting her when Petitioner found opportunity to be alone with S.T. Therefore, because Mr. Canada did not suspect that anything unusual was going on in Petitioner's car, he would have had no reason to pay close attention to the cab of Petitioner's car rather than to the roadway or to his own passenger. The odds are low that, after three years, Mr. Canada would have remembered whether S.T. ducked her head down or leaned out of the window for a short time during an otherwise uneventful drive.

Mr. Canada's Affidavit is also one-sided and untested. In addition, he implies that he did not really want to take the time to testify in court. If called to

**MEMORANDUM DECISION AND ORDER - 23**

testify at trial, Mr. Canada would have been subject to rigorous cross-examination, bringing out at least the foregoing impeaching points and perhaps even facts harmful to the defense. That Mr. Weigt made his decision based solely on either knowing the topic of the prosecutor's investigation (character and reputation evidence about Petitioner), or knowing what Mr. Canada's answers to those questions were, was a reasonable part of Mr. Weigt's trial strategy.

Petitioner's argument that his trial counsel rendered deficient performance fails under the "doubly deferential" lens of habeas corpus. *See Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011) (citation omitted.) "We take a highly deferential look at counsel's performance, through the deferential lens of § 2254(d)," explained the *Pinholster* Court. *Id*. (internal citation and punctuation omitted).

At the first level of deference, a court must "strongly presume" that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 131 S.Ct. at 1402. The presumption is overcome only where the petitioner shows that "counsel failed to act reasonably considering all the circumstances. *Id*. (internal citation and punctuation omitted). Here, the failure of Mr. Weigt to further interview or call Mr. Canada as a witness *after having interviewed him about the prosecution's interest in Mr. Canada's opinion of Petitioner's character* does not show that Mr. Weigt acted without a reasonable strategy, even if Mr. Canada *could have* offered additional testimony about the Kuna Caves incident.

**MEMORANDUM DECISION AND ORDER - 24**

At the next level of deference, the United States Supreme Court has declared: "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S.Ct. at 786-87. Contrarily, here, reasonable inferences supporting counsel's decision can be drawn from the information provided in the Canada Affidavits and the rest of the state court record.

### (2) *Strickland* Prejudice Prong

While the Idaho Court of Appeals did not reach the prejudice prong of *Strickland*, the Court concludes that, even under a de novo standard of review, Petitioner has not shown prejudice, which alone is fatal to Petitioner's ineffective assistance of counsel claim. "Prejudice" means that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 at 684, 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id*. at 694. The Supreme Court observed that "while in some instances 'even an isolated error' can support an ineffective-assistance claim if it is 'sufficiently egregious and prejudicial,' it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." *Richter*, 131 S.Ct. at 791.

**MEMORANDUM DECISION AND ORDER - 25**

The omission of testimony from "Bob" Canada, which would have been calculated to undermine the credibility of the victim, S.T., was not sufficiently egregious and prejudicial to create a reasonable probability sufficient to undermine confidence in the outcome of the trial. The Court agrees with Respondent that the level of detail the victim provided for her young age greatly strengthened the credibility of the victim. There was no other adequate indication in the record of how the victim otherwise could have learned so much about masturbation, use of a vibrator, oral sex, genital sex with and without a condom, ejaculation, and orgasm. For example, there was no evidence that she was sexually active with peers or that she was exposed to pornography.

Petitioner's counter-argument that the child could have learned this information from discussions with her mother or from movies was dispelled when the prosecutor cross-examined the child's mother:

> Q.   Did you tell [S.T.] what a condom feels like in your vagina?
>
> A.   I don't have any recollection of that.
>
> Q.   You tell her how your body would react to an orgasm?
>
> A.   Yeah, I would imagine we had a conversation about that, yes.
>
> Q.   And including how her legs might twitch? Did you tell her that?
>
> A.   I don't remember that specifically, no.

**MEMORANDUM DECISION AND ORDER - 26**

Q.  Did you tell her how a man might hold her head to make her perform oral sex on him? Did you–

A.  I don't believe that that would have been anything specific, but she would have seen that on any number of given movies.

Q.  Really? Do you watch pornography in your home for S.T. to see?

A.  No, I do not.

Q.  Okay. So did you tell her that she needs to roll her lips over her teeth so that her teeth don't hurt a penis in the course of giving oral sex? You tell her that?

A.  I don't remember anything that terribly specific, no.

(State's Lodging A-2, pp.905-06.)

S.T.'s testimony also gained credibility from her detailed recollection of the conversations Petitioner allegedly used during these encounters. He asked her if she had ever seen a penis before (State's Lodging A-2, p. 540); he said not to tell her mother because she would be upset (*Id*., p. 542); "he said . . . I was supposed to put my mouth on his penis and go back and forth" (*Id*., p. 559); and he said "I should cover my teeth with my lips so it wouldn't rub against his penis" (*Id*. p. 562).

The CARES interview, which was played to the jury and quoted in closing argument without objection (*Id*. pp. 822, 926), showed the vast array of graphic sexual language used by Petitioner. (State's Exhibit A-3.) For example, Petitioner

**MEMORANDUM DECISION AND ORDER - 27**

described the first instance of intercourse as "riding or straddling a horse," and afterward said, "I popped your cherry." (*Id*.)

The CARES interview also showed how the victim described intercourse with Petitioner as an uncomfortable feeling like Petitioner's penis was "hitting something" inside her vagina, "like hitting a bone." (*Id*.) Again, it is difficult to fathom that the child would have been able to fabricate such a varied and accurate description of sexual activity as shown in the CARES interview (*Id*.), and no evidence that the child was otherwise sexually active was presented by the mother or Petitioner.

In addition, the child told of progressively more sexual interaction with Petitioner as time went on, culminating in intercourse, following a typical pattern of grooming used by the perpetrator in child molestation cases, as was described by an expert in the case. (*Id*., pp. 501-02.) In addition, Terry Dutt, who had been molested by her own stepfather when she was a teenager, related a similar story of progressively more sexual interaction with her stepfather. (*Id*., pp. 711-13, 902-03.)

In short, the testimony of S.T., the victim, was strong and credible, while Petitioner and Terry Dutt had weak and insufficient explanations for the child's breadth of knowledge and motive to fabricate. Mr. Canada's testimony may have bolstered Petitioner's story about the drive home from the Kuna Caves, but it

**MEMORANDUM DECISION AND ORDER - 28**

would have added little or nothing to challenge how or why the child testified as she did–which was the crux of the case.

Turning to an assessment of the case Mr. Weight *did* put on, the Court concludes that, notwithstanding the failure to call "Bob" Canada as a witness, trial counsel did a satisfactory job of defending Petitioner. Mr. Weigt made many objections to medical and lay person testimony that were sustained, and he effectively cross-examined the victim (*Id.*, pp. 622-76, 690-92.) Mr. Weigt cross-examined the medical experts with skill, bringing out the point that there was no medical evidence of vaginal penetration and no evidence that Petitioner's genital warts had been transmitted to S.T. (*Id.*, p. 458-59.)

 Mr. Weigt also put on several witnesses to contradict the child's version of events, including her grandmother, who said S.T. did not like living with the defendants because the rules were too tough (*Id.*, p. 726) and that she began to doubt S.T.'s truthfulness about the allegations as time went on (*Id.*, p. 729). Mr. Weigt also called a former roommate of the family, who testified that S.T. did not stay the night on the evening S.T. claims to have had intercourse with Petitioner. (*Id.*, pp. 866-69.) The roommate also testified that he did not ever hear any evidence of sexual activity between Petitioner and S.T. (*Id.*, p. 875.) Arguing that Mr. Weigt should have called an additional witness who may have faltered on cross-examination about whether he was paying close attention to what was occurring in someone else's vehicle without exception, rather than paying attention

**MEMORANDUM DECISION AND ORDER - 29**

to the roadway, does not show there is a reasonable probability that the result of the proceeding would have been different had Mr. Canada testified.

### 3.    Conclusion

The pertinent inquiry on an ineffective assistance claim can be summed up as "not what defense counsel could have pursued, but rather whether the choices made by defense counsel were reasonable." *Siripongs v. Calderon*, 133 F.3d 732, 736 (9th Cir. 1998). Petitioner has not shown that Mr. Weigt "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Petitioner has not shown that the Idaho Court of Appeals's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S.Ct. at 786-87. The state court record reflects that Petitioner received adequate representation and a fair trial.

Based on all of the foregoing, the Court concludes that habeas corpus relief is not warranted under either § 2254(d)(1) or (2), because deficient performance has not been shown under the law and facts in the record, nor has prejudice been shown. The Court will grant Respondent's Motion for Summary Judgment, and deny Petitioner's Motion for Summary Judgment. The Petition will be denied, and the case dismissed with prejudice.

**MEMORANDUM DECISION AND ORDER - 30**

### REVIEW OF THE CLAIMS AND THE COURT'S DECISION
### FOR PURPOSES OF CERTIFICATE OF APPEALABILITY

In the event Petitioner files a notice of appeal from the Order and Judgment in this case, the Court now evaluates the claims within the Petition for suitability for issuance of a certificate of appealability (COA), which is required before a habeas corpus appeal can proceed. 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); Rule 11(a), Rules Governing Section 2254 Cases.

A COA will issue only when a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court has explained that, under this standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.*" Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal citation and punctuation omitted).

When a court has dismissed the petition or claim on the merits, the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484. The COA standard "requires an overview of the claims in the habeas petition and a general assessment of their merits," but a court need not determine that the petitioner would prevail on appeal. *Miller-El*, 537 U.S. at 336.

**MEMORANDUM DECISION AND ORDER - 31**

Here, the Court has dismissed Petitioner's claim on the merits. The Court finds that additional briefing on the COA is not necessary. Having reviewed the record again, the Court concludes that reasonable jurists would not find debatable the Court's decision on the merits of the claims raised in the Petition and that the issues presented are not adequate to deserve encouragement to proceed further. As a result, the Court declines to grant a COA on any issue or claim in this action.

If he wishes to proceed to the United States Court of Appeals for the Ninth Circuit, Petitioner must file a notice of appeal in this Court, and simultaneously file a motion for COA in the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 22(b), **within thirty (30) days after entry of this Order**.

## ORDER

**IT IS ORDERED:**

1.     Respondent's Motion for Summary Judgment (Dkt. 13) is GRANTED, and Petitioner's Motion for Summary Judgment (Dkt. 11) is DENIED. Petitioner's case is DISMISSED with prejudice.

2.     The Court will not grant a Certificate of Appealability in this case. If Petitioner chooses to file a notice of appeal, the Clerk of Court is ordered to forward a copy of this Order, the record in this case, and Petitioner's notice of appeal, to the United States Court of Appeals for the Ninth Circuit.

**MEMORANDUM DECISION AND ORDER - 32**



DATED:  February 13, 2012

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 33**